# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**MATTHEW JOHN THOMPSON,**

      **Plaintiff,**

**vs.**                        **Case No. 4:15cv253-MW/CAS**

**CAPTAIN J. SIKES,**
**SERGEANT J. STRENGTH, and**
**CORRECTIONAL OFFICER GOFF,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff filed a motion for summary judgment, ECF No. 47, on July 18, 2016, and Defendants filed a response, ECF No. 48, to that motion. When Plaintiff filed "objections" to Defendants' response, ECF No. 49, Defendants filed a motion requesting leave to "supplement their motion for summary judgment."  ECF No. 50.  Instead, Defendants were permitted to file a second amended motion for summary judgment.  ECF No. 51. Defendants did so on August 26, 2016.  ECF No. 53.  Plaintiff filed his opposition to that motion, ECF No. 53, in late September 2016.  ECF No.

55.  Both summary judgment motions are addressed in this Report and Recommendation

## I.    Allegations of the second amended complaint

Mr. Thompson claims that Defendants unlawfully used chemical

agents on him even though he was not creating a disturbance.  ECF No.

18.  Mr. Thompson said the reason this happened was due to retaliation

because he had "sent more than 100 grievances" and complaints to both

state and federal courts against staff at Liberty Correctional Institution.  *Id.*

at 6.  Mr. Thompson specifically asserts a violation of his Eighth

Amendment rights, *id.* at 8, but a liberal construction of the complaint

reveals a plausible First Amendment retaliation claim as well.  As relief, he

seeks compensatory and punitive damages.  *Id.*

## II.   Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus,

summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett,</u>

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The

"party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  Celotex

Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The burden then shifts to the

non-moving party to show[1] the court "that there is an absence of evidence

to support the nonmoving party's case."  Id. at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case.

Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th

Cir. 2004) (citations omitted).  A party must show more than the existence

of a "metaphysical doubt" regarding the material facts, Matsushita Elec.

Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct.

---

[1] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  The court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  Hickson Corp.,

357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252,

106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All reasonable inferences

must be resolved in the light most favorable to the nonmoving party,

Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is

a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380,

127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (cited in Ricci v. DeStefano, 129

S.Ct. 2658, 2677 (2009)).  "Where the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial."  Matsushita Elec. Indus. Co., 475 U.S. at 587

(internal quotation marks omitted) (quoted in Ricci v. DeStefano, 129 S.Ct.

at 2677).

    "Cross motions for summary judgment do not change the standard."

Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic &

Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire

Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297

(M.D. Fla. 2008).  "'Cross motions for summary judgment are to be treated

separately; the denial of one does not require the grant of another.'"

Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d

1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608

F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F.

Supp. 2d at 1297-98)).  Because Plaintiff (as the party with the burden of

proof) has a heavier burden on summary judgment, the Court will consider

the Defendants' motion first.  If Defendants' motion is denied, the Court will

consider whether Plaintiff is entitled to judgment as a matter of law.

## III.    The relevant Rule 56 evidence

All three Defendants submitted declarations stating they did not

conspire to write a false disciplinary report against Plaintiff, asserting that

Plaintiff's allegations are untrue, and contending that chemical agents were

administered because Mr. Thompson was causing a disturbance.  ECF No.

53, Exhibits B (Defendant Strength's Declaration), C (Defendant Sikes'

Declaration), and D (Defendant Goff's Declaration).  Each of the three

Declarations state that Mr. Thompson was sprayed with chemical agents

because he did not comply with orders to cease his disruptive conduct.

Each Declaration states that Mr. Thompson was issued a disciplinary report for creating, participating in, or inciting a minor disturbance.

The Use of Force Report states that Mr. Thompson was cursing at staff and yelling down the wing, "attempting to gain the attention of other inmates on the wing thus disrupting the normal operation of the confinement unit."  ECF No. 53, Ex. A at 3.  The Report states that several officers "attempted to counsel" with Mr. Thompson, but "without results."  *Id.*  According to the Report, Officer Goff first attempted to get Mr. Thompson to stop his "disruptive behavior," followed by Sergeant Strength, and finally Captain Sikes.  *Id.*  Their efforts were to no avail.  *Id.*  At the direction of Captain Sikes, Officer Goff sprayed chemical agents "through the cell door bars towards" Mr. Thompson at 8:55 a.m.  *Id.* at 4.  The Report states that the chemical agents had "little effect" and Mr. Thompson continued yelling, cursing, and "attempting to incite other inmates to join in the disturbance he was creating."  *Id.*  At 9:02 a.m., Officer Goff again sprayed chemical agents.  *Id.*  Mr. Thompson stopped his behavior after the second administration of chemical agents.  *Id.*

Those events took place on the morning of March 16, 2014, in the administrative confinement unit at Liberty Correctional Institution.  ECF No.

53, Ex. A at 3.  After the use of chemical agents, Mr. Thompson was

"monitored for 60 minutes and showed no signs of respiratory distress."

ECF No. 53, Ex. C at 2.  He was given a shower to remove the chemical

agent and placed back in his cell after it was decontaminated.  ECF No. 53,

Ex. C at 2; Ex. D at 2.  A nurse examined Mr. Thompson and found no

signs of injury.  ECF No. 53, Ex. C at 2.

Sergeant Strength issued Mr. Thompson a disciplinary report,

charging him with "creating, participating in, or inciting a minor disturbance.

ECF No. 53, Exhibits B, E.  The disciplinary report noted that "only after

chemical agents were applied, did" Mr. Thompson cease his "disruptive

actions."  Ex. E at 2.  The disciplinary report was approved by Captain

Sikes.  *Id.* at 4.  Mr. Thompson entered a not guilty plea, but was ultimately

found guilty as charged of the disciplinary report.  *Id.* at 1.  He was

sentenced to 30 days in disciplinary confinement.  *Id.*

Mr. Thompson provided a declaration with his motion for summary

judgment.  ECF No. 47 at 5.  Although brief, he declares that "Defendants

worked in concert to create falsified documents to conceal the true reason

for the use of chemical agent[s] which was to deter [him] from exercising

[his] First Amendment rights in court."  ECF No. 47 at 5.  Mr. Thompson

states that on March 15, 2014, he was "removed from a two-man confinement cell and placed in a solo 'PC' [protective custody] cell in preparation for the premeditated assault." *Id.* After the use of chemical agents, he was "removed for a forced shower" and "returned to the same confinement cell which remained uncleaned." *Id.* Mr. Thompson also states that he "was made to sign a statement under duress of threats of more abuse by Defendants Sikes and Strength." *Id.*

Mr. Thompson's reply to Defendants' summary judgment motion is also a sworn declaration under penalty of perjury. ECF No. 55 at 1, 10. He declares there was only one gassing, not two, and reports that Officer Goff directed one "'direct hit' [of chemical agents] to the head/face area." ECF No. 55 at 2, 5. He says that he was "ordered to stay in the shower" by Captain Sikes to spread the chemical agents on his body and "increase his suffering." *Id.* at 2. Mr. Thompson also states that when he was placed back in his cell, it "remained contaminated!" *Id.* at 3. He contends he was moved from his cell to an isolation cell on the day before the use of force. *Id.* On the day in question, he declares "there was no one screaming, or cussing, or causing any disturbance in Y2" wing. *Id.* Mr. Thompson suggests that Defendants' story that he, a "150 lb. Whiteman," was capable

of inciting "Black & Latino inmates to join in the disturbance" is "absurd."
ECF No. 55 at 5.

Inmate Michael Canty was in confinement on March 16, 2014, and
could overhear the events at issue.  ECF No. 55 at 8.  Mr. Canty states that
"that morning, there was no one screaming, or cussing, or causing any
disturbance in Y2."  *Id.*  Mr. Canty said that when Captain Sikes was making
"his little speech on video camera," Mr. Thompson was claiming his First
and Eighth Amendment federal rights."  *Id.*  An officer replied, "We don't
care about your rights."  *Id.*  Mr. Canty declares that Sergeant Strength and
Captain Sikes sprayed Mr. Thompson "because they could get away with it
[and] not because he was making any trouble."  *Id.*

Inmate Samuel Velez submitted an affidavit stating that usually, "after
gas agents are used," the cell is cleaned.  ECF No. 55 at 7.  On March 18,
2014, he advises that cell Y2-1-L still "smelled real bad of gas agents,"
which he also could see "still all over the wall, floor, toilet and sink."  *Id.*

## IV.   Analysis

## A.   Eighth Amendment Claims

Defendants point out that the "use of chemical agents on [a]
disruptive prisoner is not unconstitutional."  ECF No. 53 at 14 (citation

omitted).  Defendants contend that in this case, ""there was a penological

justification" to use chemical agents on Mr. Thompson - his disruptive

behavior - and that the agents were administered only after he failed to

obey orders.  *Id.* at 15.  They also contend that the force used was not

excessive.  *Id.* at 16.  Defendants seek summary judgment on the Eighth

Amendment claims.

    The Eighth Amendment forbids cruel and unusual punishment.

Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003).  A claim that prison

officials unnecessarily used excessive physical force on a prisoner falls

within the Cruel and Unusual Punishments Clause.  The core judicial

inquiry for this claim is the standard set forth in Whitley v. Albers, 475 U.S.

312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986): "whether force was applied in

a good-faith effort to maintain or restore discipline, or maliciously and

sadistically for the very purpose of causing harm."  Hudson v. McMillian,

503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) (quoting

Whitley*,* at 320-21, 106 S.Ct. at 1085).  Analysis of an excessive force

claim considers "the need for application of force, the relationship between

that need and the amount of force used, the threat 'reasonably perceived

by the responsible officials,' and 'any efforts made to temper the severity of

a forceful response.'"  Hudson, 503 U.S. at 7; *see also* Harris v. Chapman,

97 F.3d 499, 505 (11th Cir. 1996).  The level of injury to a prisoner is

relevant and must also be considered, but it is not dispositive of the issue.

"'When prison officials maliciously and sadistically use force to cause

harm,' the Court recognized, 'contemporary standards of decency always

are violated ... whether or not significant injury is evident. Otherwise, the

Eighth Amendment would permit any physical punishment, no matter how

diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'"

Hudson, 503 U.S. at 9, 112 S.Ct. 995 (quoted in Wilkins v. Gaddy, 559

U.S. 34, 37, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010)).  Thus, while

force may be used to quell a disturbance, including the use of chemical

agents, *see* Danley v. Allen, 540 F.3d 1298, 1308 (11th Cir. 2008), when "a

prisoner has stopped resisting there is no longer a need for force, so the

use of force thereafter is disproportionate to the need."  Stated more

directly, if there is no disturbance, there is no need for force at all.  There is

a genuine dispute between the parties as to this claim.  Summary judgment

cannot be granted in favor of Defendants or Plaintiff.

In addition, prison officials must "temper the severity" of the use of

force by decontamination procedures.  Danley v. Allen, 540 F.3d at 1309

(citing <u>Williams v. Benjamin</u>, 77 F.3d 756, 765 (4th Cir. 1996).  Defendants

provided evidence that Plaintiff was permitted to shower and his cell was

decontaminated.  Plaintiff provided evidence to the contrary.  This aspect of

the Eight Amendment claim is disputed and summary judgment cannot be

granted as to this issue either.

Additionally, each Defendant had some involvement in the use of

force.  Although Sergeant Strength's involvement was minimal, there is

evidence that he participated in creating a fictional need to use force.  His

request to dismiss the claim, ECF No. 53 at 17, should be denied.

To the degree Defendants raise qualified immunity to these claims,

that defense should be denied.  *See* <u>Danley</u>, 540 F.3d at 1310 (citing

<u>Johnson v. Breeden</u>, 280 F.3d 1308, 1321–22 (11th Cir. 2002)).  It has

been well "established that all infliction of excessive force on a prisoner

sadistically and maliciously for the very purpose of causing harm and which

does cause harm violates the Cruel and Unusual Punishment Clause."

<u>Johnson</u>, 280 F.3d at 1321.

## B.   Retaliation Claim

"It is well established that a prisoner's constitutional rights are

violated if adverse action is taken against him in retaliation for the exercise

of his First Amendment rights." Pate v. Peel, 256 F.Supp.2d 1326, 1336

(N.D. Fla. 2003) (citing Farrow v. West, 320 F.3d 1235, 1248 (11th Cir.

2003); Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir.1997); Wright v.

Newsome, 795 F.2d 964 968 (11th Cir. 1986); Adams v. James, 784 F.2d

1077, 1080 (11th Cir. 1986)).  Retaliation in the prison setting may be

established by demonstrating that a prison official took adverse actions

against an inmate because he filed a grievance.  See Farrow, 320 F.3d at

1248; Pate, 256 F.Supp.2d at 1336.  To demonstrate a viable retaliation

claim, Mr. Thompson must show (1) that he engaged in protected First

Amendment activity, (2) suffered an adverse action because of that activity,

and (3) show a causal connection between the two.  Smith v. Mosley, 532

F.3d 1270, 1276 (11th Cir. 20008).  If a prisoner comes forward with such

evidence, the burden shifts to prison officials to prove that the same actions

would have been taken anyway for legitimate reasons.

Here, Defendants provided evidence declaring that Mr. Thompson

received the disciplinary report because of his conduct, not because of

grievances.  Mr. Thompson said in his Declaration that "Defendants worked

in concert" to falsify documents "to conceal the true reason for the use of

chemical agent which was to deter" him from exercising his First

Amendment rights.  ECF No. 47 at 5.  The parties' declarations are in
conflict and there is a genuine dispute as to this issue.  It is noted that
Defendants contend that chemical against would have been used to quell
the disturbance regardless of whether Mr. Thompson had filed grievances.
ECF No. 53 at 20-21.  While that may be true, Mr. Thompson disputes that
he was creating a disturbance.  In light of this dispute, summary judgment
cannot be granted in favor of either party.

## C.   Conspiracy

Mr. Thompson has sought to bring a conspiracy claim against the
Defendants.  However, the "intracorporate conspiracy doctrine holds that
acts of corporate agents are attributed to the corporation itself, thereby
negating the multiplicity of actors necessary for the formation of a
conspiracy."  McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036
(11th Cir. 2000) (en banc) (quoted in Grider v. City of Auburn, 618 F.3d
1240, 1261 (11th Cir. 2010)).  The doctrine provides that a "corporation
cannot conspire with its employees, and its employees, when acting in the
scope of their employment, cannot conspire among themselves."
McAndrew, 206 F.3d at 1036 (quoted in Grider, 618 F.3d at 1261).  The
doctrine has been extended beyond private corporations and applies to

public entities as well.  Denney v. City of Albany, 247 F.3d 1172, 1190-91

(11th Cir. 2001) (holding that where the "only two conspirators identified"

were both city employees, the intracorporate conspiracy doctrine barred

plaintiffs' § 1985 conspiracy claims) (citing Dickerson v. Alachua Cnty.

Comm'n, 200 F.3d 761, 768 (11th Cir. 2000); *see also* Rehberg v. Paulk,

611 F.3d 828, 854 (11th Cir. 2010) (stating that "intracorporate conspiracy

doctrine bars conspiracy claims against corporate or government actors

accused of conspiring together within an organization").  It has also been

applied to claims alleging that "employees of the FDOC" conspired to

violated an inmate's constitutional rights "in retaliation for his filing

grievances . . . ."  Claudio v. Crews, No. 5:13cv345-MP/EMT, 2014 WL

1758106, at *6 (N.D. Fla. May 1, 2014) (dismissing conspiracy claim

brought in § 1983 action); *see also* Briggs v. Hancock, No.

3:13-CV-212-J-39MCR, 2014 WL 5378527, at *9 (M.D. Fla. Oct. 21, 2014)

(same).  Here, all three Defendants were employed by the Florida

Department of Corrections.  The conspiracy claims are barred by the

intracorporate conspiracy doctrine.  Moreover, a free-standing conspiracy

claim neither adds to or detracts from the other constitutional claims.

Summary judgment should be granted in favor of the Defendants on the

conspiracy claim.

## D.    Eleventh Amendment immunity

Defendants raise Eleventh Amendment immunity "to the extent that

Plaintiff may be attempting to sue Defendants in their official capacity for

damages."  ECF No. 53 at 25.  Mr. Thompson did not address that

argument.

Absent limited exceptions, the State of Florida and its agencies are

immune from suit in this Court by force of the Eleventh Amendment.  Carr

v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990); *see also*

Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d

114 (1985) (reiterating that "absent waiver by the State or valid

congressional override, the Eleventh Amendment bars a damages action

against a State in federal court.").  That "bar remains in effect when State

officials are sued for damages in their official capacity."  Kentucky, 473

U.S. at 169, 105 S.Ct. at 3107; *see also* Odebrecht Const., Inc. v.

Secretary, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013)

(same).  Defendants have not waived sovereign immunity, Gamble v.

Florida Dep't of Health and Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986),

and summary judgment should be granted on this basis.  This case should proceed against Defendants in their individual capacities only.

## E.    Absence of physical injury

Mr. Thompson seeks $300,000.00 in compensatory damages and $300,000 in punitive damages as relief.  Doc. 18 at 8.  Defendants request dismissal of the claims for monetary damages because there was no physical injury.  ECF No. 53 at 25-26.  Mr. Thompson did not address that argument either, nor did he come forward with evidence to show that he suffered more than *de minimis* injury.

Title 42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  A prisoner plaintiff is prevented from seeking punitive or compensatory damages in the absence of a physical injury. Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011); Watson v. Edelen, 76 F. Supp. 3d 1332, 1378 (N.D. Fla. 2015).  Even if successful on his claims, Mr. Thompson's request for compensatory monetary damages must necessarily be limited to nominal

damages as required by 42 U.S.C. § 1997e(e).  <u>Harris v. Garner</u>, 216 F.3d
970 (11th Cir. 2000)[2], *reinstating in part* 190 F.3d 1279 (11th Cir. 1999);
<u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1199 (11th Cir. 2011).

## F.   Duplicative Litigation

As a final matter, Defendants contend that Mr. Thompson has filed
duplicative complaints concerning the event at issue in this case.  ECF No.
53 at 9-10.  Defendants point to case number 4:14cv465-RH/GRJ which
was filed on August 29, 2014.  "Defendants Goff and Strength are not
named in that case as Defendants, [but] they are mentioned and use of
force in that case is the same use of force that forms the basis of Plaintiff's
claim in the instant case."  ECF No. 53 at 11.  In response, Mr. Thompson
argues that only Captain Sikes is a Defendant in this case and the other
case.  ECF No. 55 at 3-4.  He contends this case concerns events which
took place on March 16, 2014, and the prior case concerns events "from
March 10, 2014."  *Id.* at 4.

---

[2] <u>Harris v. Garner</u>, 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d 1059,
and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir. 2000), *cert.
denied* 121 S. Ct. 2214 (2001).  The parts of the panel opinion relevant to this legal
issue were reinstated.

Case number 4:14cv465 is pending in this Court.  Mr. Thompson named four Defendants in that case: Lieutenant Smith, Captain Sikes, Officer Atkins, and Officer Price.  Recently, the second amended complaint was dismissed in part and the claim against Officer Atkins was dismissed. ECF No. 55.  The Report and Recommendation entered in that case explained that on March 10, 2014, either Defendants Sikes or Smith "created a fictitious disciplinary report for disrespect to prison officials, which was allegedly" done out of retaliation.  ECF No. 54 at 3.  Another claim which remains pending is that Mr. Thompson was "removed from his two-man cell, placed in a cell alone, and gassed!"  ECF No. 54 at 7 (quoting from the second amended complaint, ECF No. 43 at 9.)  That allegation demonstrates that the use of chemical agents challenged in this case is included in the claims raised in case 4:14cv465-RH/GRJ. However, Mr. Thompson did not include the claims against Sergeant Strength and Officer Goff in that prior case.

It is true that a plaintiff may not litigate two cases at the same time based on the same event.  The remedy, however, is not to dismiss this case.  The most efficient and fair remedy is to consolidate the cases.  Rule 42(a) provides that "[i]f actions before the court involve a common question

of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a).  Case number 4:14cv465 was filed prior to this case, but the parties have just begun discovery.  *See* ECF No. 56 in that case.  Summary judgment motions are due to be filed by May 19, 2017.  *Id.*  This case should be consolidated with case number 4:14cv465 and it is recommended that if this Report and Recommendation is granted, such actions as are permissible by Rule 42(a) be directed by the presiding district judge.

**Recommendation**

It is respectfully **RECOMMENDED** that Plaintiff's motion for summary judgment, ECF No. 47, be **DENIED** and Defendants' second amended motion for summary judgment, ECF No. 53, be **DENIED** in part because there is a genuine dispute of material fact as to the First and Eighth Amendment claims.  It is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** as to the separate conspiracy claim, and claims presented against Defendants in their official capacities.  It is further **RECOMMENDED** that the case proceed against Defendants in their individual capacities for nominal damages only.  Finally, it is

**RECOMMENDED** that this case be consolidated with case number

4:14cv465-RH as they have common questions of issue and fact.

**IN CHAMBERS** at Tallahassee, Florida, on January 25, 2017.


S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**